## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO.: 5:06CV32

| | | |
|---|---|---|
| **HOWARD J. MIKELS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNIQUE TOOL** | ) | |
| **& MANUFACTURING CO., INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER** is before the Court on the following Motions and Memoranda: (1)

Defendant's Motion for Summary Judgment and Memorandum in Support, both filed November

30, 2006 [Documents ## 29, 30]; (2) Plaintiff's Motion to Amend Complaint and Memorandum

in Support, both filed December 18, 2006 [Documents ## 34, 35]; (3) Joint Motion for Order for

Discovery of Financial Records, filed December 29, 2006 [Document # 38]; (4) Plaintiff's

Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed December 29,

2006 [Document # 39]; (5) Plaintiff's Motion for Summary Judgment and Memorandum in

Support, both filed December 29, 2006 [Documents ## 40, 41]; (6) Defendant's Motion for

Summary Judgment on Plaintiff's Quantum Meruit Claim and Memorandum in Support, both

filed December 29, 2006 [Documents ## 42, 43]; (7) Defendant's Motion to Strike Plaintiff's

Amended Reply to Defendant's Counterclaim and Memorandum in Support, both filed

December 29, 2006 [Documents ## 44, 45]; (8) Defendant's Memorandum in Opposition to

Plaintiff's Motion to Amend Complaint, filed January 5, 2007 [Document # 47]; (9) Plaintiff's

Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's Amended Reply to

Defendant's Counterclaim, filed January 9, 2007 [Document # 48]; (10) Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on Plaintiff's Quantum Meruit Claim, filed January 12, 2007 [Document # 49]; (11) Plaintiff's Reply in Response to Defendant's Motion in Opposition to Plaintiff's Motion to Amend Complaint, filed January 12, 2007 [Document # 50]; (12) Defendant's Reply in Response to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed January 19, 2007 [Document # 53]; (13) Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed January 19, 2007 [Document # 54]; (14) Defendant's Reply in Response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's Amended Reply to Defendant's Counterclaim, filed January 22, 2007 [Document #55]; (15) Defendant's Reply in Response to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim, filed January 29, 2007 [Document #56]; and (16) Plaintiff's Reply in Response to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed February 1, 2007 [Document # 57]. These Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for the reasons stated below, the Court will grant Plaintiff's Motion to Amend Complaint; deny Defendant's Motion to Strike Plaintiff's Amended Reply to Defendant's Counterclaim; deny Defendant's Motion for Summary Judgment; deny Defendant's Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim; deny Plaintiff's Motion for Summary Judgment; and grant the Parties' Joint Motion for Order for Discovery of Financial Records.

# I.  FACTUAL AND PROCEDURAL HISTORY

This case arises out of a dispute between Plaintiff, Howard J. Mikels ("Plaintiff" or "Mikels"), and Defendant Unique Tool and Manufacturing Company, Incorporated ("Defendant or "Unique Tool") over alleged unpaid sales commission earnings.  On January 27, 2006, Plaintiff filed suit in the Superior Court of Catawba County, seeking recovery against Defendant for unpaid sales commissions, exemplary damages resulting from unpaid sales commissions, treble damages for unfair and deceptive trade practices, actual and punitive damages for fraud, and attorneys fees.  Defendant timely removed the action to this Court based on diversity of the parties, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  On October 11, 2006, Plaintiff filed an Amended Complaint seeking additional recovery from Defendant for the reasonable value of services Plaintiff provided to Defendant under a theory of *quantum meruit*.  On October 30, 2006, Defendant filed counterclaims against Plaintiff seeking damages and punitive damages for fraud and willful and wanton conduct, and damages and treble damages for unfair and deceptive trade practices.

Defendant is an Ohio corporation, with a principal place of business in Michigan, that is in the business of manufacturing metal stampings.  (Def. Notice of Removal ¶ 9; Def. Mem. in Supp. Mt. for Sum. Judg. at 3).  From June 2000 until December 7, 2004, Plaintiff, a resident of Catawba County, North Carolina, was employed as a sales representative for Defendant. (Compl. ¶ 3; Pl. Mem. in Opp. to Def. Mt. for Sum. Judg., Ex. L, ¶ 1 ("Plaintiff's Affidavit")).  During Plaintiff's employment with Defendant, Plaintiff facilitated a sales relationship between Defendant and Prodelin Corporation ("Prodelin"). (Pl. Aff.  ¶ 1).  Prodelin is a North Carolina Corporation located in Catawba County with whom Plaintiff developed a business relationship

prior to his employment with Defendant. (*Id*.). Plaintiff contends that in Summer 2000, Defendant's officers, specifically president Daniel Althaus and vice-president Douglas Althaus, orally agreed to pay Plaintiff a 5% commission on all metal stampings Plaintiff sold to Prodelin. (*Id*. ¶ 2). Defendant, through its agent Althaus, has stated that the parties agreed that Plaintiff's rate of commission would "start out at 5 percent" but would vary at times depending on various market factors. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 2, Ex. D., at 1-3 ("Deposition of Daniel Althaus")).

Plaintiff states that the first sales project he facilitated that involved sales between Defendant and Prodelin began in March 2001 and was known as the "Black Mount" project. (Pl. Aff. ¶ 4). Plaintiff contends that he was to be paid a 5% commission by Defendant for any sales resulting from the project. (*Id*.). However, in fall of 2002, Plaintiff agreed to a 4% commission on such sales. (*Id*.). Plaintiff claims that he agreed to the 1% commission reduction because it was his intention that Defendant would pay him the difference at a later date. (*Id*.). Defendant never paid the expected difference. (*Id*.). Plaintiff admits that on May 16, 2002, Defendant failed to pay him a commission for a single sale of a Black Mount project part that Plaintiff sold to Prodelin for a price of $134.64. (*Id*. ¶ 5). Plaintiff maintains, however, that Defendant's failure to pay a commission during this period of their relationship was an isolated occurrence and did not provide him notice that Defendant would begin regularly withholding commission payments in 2003. (*Id*.).

Plaintiff states that subsequent to the Black Mount project, Plaintiff facilitated sales projects between Defendant and Prodelin titled "TriMast," "EchoStar," "non-pen," and "gen-5." (Pl. Aff. ¶¶ 6,7). Plaintiff states that beginning in 2003, Defendant unilaterally decided to pay

Plaintiff at a commission rate of 2% or less for sales arising from these projects, or stopped

paying Plaintiff a commission at all for such sales after initially paying Plaintiff a commission

rate of 5%. (*Id*. ¶¶ 6-12). Plaintiff also states that Defendant failed to pay a commission for sales

related to the Black Mount project that occurred in 2003 or later. (*Id*. ¶ 11). Plaintiff contends

that he never agreed to Defendant's decisions to pay him a lower commission or no commission

for the various sales projects he facilitated for Defendant. (*Id*. ¶¶ 6-12).

Plaintiff further states that, in Fall of 2003, Defendant began to conceal the fact that it

was not paying commissions to Plaintiff. (Pl. Aff. ¶ 13). Plaintiff contends that Defendant

procured this concealment by not reporting the total amount of sales for which Plaintiff was

responsible on the monthly commission justification statements that Defendant sent to Plaintiff.

(*Id*.). Plaintiff states that Defendant's alleged concealment prevented him from knowing that he

was not being paid a commission for numerous sales until after he was terminated by Defendant

in December 2004. (*Id*.).

Defendant and Plaintiff agree that in late 2003 or early 2004, Defendant, through its agent

Daniel Althaus, presented Plaintiff with a written "Manufacturer's Representative Agreement."

(Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 2; Pl. Mem. in Opp. to Def. Mt. for Sum. Judg.

at 9). In sum, the agreement stated that in exchange for Plaintiff using his best efforts to obtain

customers for Defendant, Defendant would pay Plaintiff a variable rate of commission for sales

to such customers. (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 2; Pl. Mem. in Opp. to Def.

Mt. for Sum. Judg., Ex. B. ("Sales Agreement")). Defendant contends that Plaintiff indicated to

its agents that he would sign the agreement. (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 2-3,

Ex. A, p. 136, ("Deposition of Plaintiff")). Plaintiff admitted during deposition that despite any

manifestations he made to Defendant regarding the agreement, he did not sign the agreement and he never intended to sign the agreement. (Dep. of Pl. at 136). Plaintiff further stated during deposition, that at the time Defendant presented him with the agreement, he was beginning to distrust Defendant due to his rising suspicions that it was not paying him his full commissions. (*Id*.). Plaintiff contends that he made his manifestation to Defendant in an effort to stall Defendant during a time when their relationship was deteriorating. (Pl. Mem. in Supp. of Sum Judg. at 2). Plaintiff further contends through his expert, Willis Fitch, that he was justified in not signing the agreement because the agreement was unfair to Plaintiff. (*Id*.; Pl. Mem. in Opp. to Def. Mt. for Sum. Judg., Ex. H., p. 87-88 ("Deposition of Willis Fitch")).

Plaintiff was terminated by Defendant on December 7, 2004. (Pl. Aff. ¶ 15). Plaintiff maintains that Defendant never discussed with him whether he would receive commissions for Defendant's sales to Prodelin after his termination. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 9). Plaintiff contends that he is entitled to reasonable compensation for such sales due to his facilitation of the business relationship between Defendant and Prodelin. (*Id*.).

Plaintiff calculates that Defendant paid him a lower rate of commission or no commission on millions of dollars worth of sales that Plaintiff facilitated between Defendant and Prodelin. (*Id*. at 11-12). Plaintiff contends that Defendant owes him hundreds of thousands of dollars for these alleged unpaid commissions. (*Id*.).

## II. DISCUSSION

### A. Motions Relating to Pleadings

Each party has filed a motion regarding Plaintiff's pleadings and responses in opposition to those motions. On December 18, 2006, Plaintiff filed a Motion to Amend Complaint. On

January 5, 2007, Defendant filed a Memorandum in Opposition to Plaintiff's Motion to Amend.

On December 29, 2006, Defendant filed a Motion to Strike Plaintiff's Amended Reply to

Counterclaims. On January 9, 2007, Plaintiff filed a Memorandum in Opposition to Defendant's

Motion to Strike. On January 22, 2007, Defendant filed a Reply in Response to Plaintiff's

Memorandum in Opposition to Defendant's Motion to Strike. Because these motions and

memoranda impact the parties' pending cross-motions for summary judgment, the Court will

address them before addressing the merits of the parties' summary judgment motions.

**1. Plaintiff's Motion to Amend Complaint**

**a. Standard of Review**

Once a defendant files a responsive pleading to a plaintiff's complaint, the plaintiff may

amend his complaint only by leave of the court or by written consent of the defendant. FED. R.

CIV. P. 15(a). Moreover, "leave shall be freely given when justice so requires." *Id.* "This liberal

rule gives effect to the federal policy in favor of resolving cases on their merits instead of

disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing

*Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In sum, leave to amend

should only be denied where the amendment would be prejudicial to the opposing party, there

has been bad faith on the part of the moving party, or the amendment would be futile. *Id.* (citing

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Whether an amendment is

prejudicial is often determined by the nature of the amendment and its timing. *Id.* at 427. For

example, an amendment would be prejudicial if it raises a new legal theory that would require the

gathering and analysis of facts not already considered by the defendant and that is offered shortly

before or during trial. *Id.*

**b. Whether Plaintiff's Motion to Amend Complaint is Prejudicial to Defendant**

The Plaintiff's motion to amend is his second attempt to amend his complaint. After obtaining written consent of the Defendant, Plaintiff filed his first amended complaint on October 11, 2006. Plaintiff's instant motion was filed on December 18, 2006, after the close of discovery in this case, and appears to be at least partially in response to issues raised by Defendant in Defendant's motion for summary judgment. Despite the late nature of this filing, Plaintiff contends that his motion to amend is not prejudicial to Defendant. (Pl. Mem. in Supp. of Mt. to Am. at 7-8). Plaintiff contends that his first amended complaint pled sufficient facts to satisfy all of the elements of his asserted claims, and that this most recent proposed amendment merely corrects a technical defect in the pleadings or adds more specific facts to the pleadings that Plaintiff learned through discovery. (*Id*. at 4-6). Defendant disputes Plaintiff's assertions and claims that the motion is prejudicial. (Def. Mem. in Opp. to Pl. Mt. to Am. at 4-6).

**i. Plaintiff's *Quantum Meruit* Claim**

Plaintiff's motion seeks to amend the pleadings on two of his six causes of action. Plaintiff first seeks to amend his Sixth Cause of Action, *Quantum Meruit*, by removing the first paragraph under that cause of action. (Pl. Mt. to Am. Compl. ¶ 1). The paragraph Plaintiff seeks to remove states:

> All previous allegations of this complaint are fully incorporated herein by reference as if fully set out.

(Pl. Am. Compl. ¶ 34).

By incorporating "all previous allegations" under his *quantum meruit* claim, Plaintiff incorporated his contention that a contract existed between Defendant and himself. (Pl. Am.

8

Compl. ¶ 5). Defendant seeks summary judgment on Plaintiff's *quantum meruit* claim on the grounds that such claim cannot survive if it includes allegations of an express contract. (Def. Mem. in Supp. of Mt. for Sum. Judg. at 11). Plaintiff now apparently recognizes his error and seeks to redact this "technical defect" to his pleading. (Pl. Mem. in Supp. of Mt. to Am. at 6).

The Court discusses the merits of Defendant's arguments for summary judgment on Plaintiff's *quantum meruit* claim below. However, with regard to the issue of whether Plaintiff's motion to amend is prejudicial to Defendant, it is sufficient to note that Plaintiff's request to remove the first paragraph under his *quantum meruit* claim is an attempt to preserve an existing claim by redaction. Plaintiff's request is not an attempt to add anything new to the claim which might be deemed prejudicial to Defendant. *See Johnson*, 785 F.2d at 509. The Court therefore finds that Plaintiff's request to remove paragraph 34 under his *quantum meruit* claim is not prejudicial to the Defendant.

**ii. Plaintiff's Fraud Claim**

Plaintiff also seeks to amend his Third Cause of Action, Fraud. (Pl. Mt. to Am. Compl. ¶ 2). Plaintiff seeks to add to the factual allegations in his claim for fraud at paragraphs 22, 23, 24, 25, and 26 of his amended complaint. (*Id*.). Plaintiff contends that none of these additions is prejudicial to Defendant because they do not add any new theories of recovery or allege any facts that have not already been fully disclosed through discovery. (Pl. Mem. in Supp. of Mt. to Am. at 4-6; Pl. Rep. to Def. Mem. in Opp. to Pl. Mt. to Am. at 2-3). Defendant disputes Plaintiff's contention, arguing that Plaintiff's proposed amendment is prejudicial to Defendant because it alleges a new theory of recovery and new factual allegations which Defendant has not had the opportunity in discovery to explore. (Def. Mem. in Opp. to Pl. Mt. to Am. at 4-6).

Defendant particularly objects to Plaintiff's proposed allegations that state that a fiduciary relationship existed between Plaintiff and Defendant, and that Defendant owed Plaintiff a duty to disclose the allegedly concealed sales information. (Def. Mem. in Opp. to Pl. Mt. to Am. at 5-6). Plaintiff's proposed allegations, which are offered as part of a revised version of paragraph 22 of his amended complaint, state in relevant part:

> The Defendant, through its officers, Dan and Doug Althaus, intentionally concealed material facts from the Plaintiff by continually and intentionally withholding and secreting from the Plaintiff the total amount of all sales made by Defendant to Prodelin Corporation; such fraudulent concealment by the officers of Defendant began in September 2003 and continued through the date of Plaintiff's termination, December 7, 2004. Defendant, through its said officers, had a duty to disclose such material information as described hereinabove to Plaintiff because:
>
> a. Plaintiff and Defendant were agent and principal, thereby creating a fiduciary relationship between the parties.
>
> b. [S]aid officers of Defendant took affirmative steps to conceal these material facts from the Plaintiff by not reporting to Plaintiff all sales to Prodelin for which Plaintiff would be entitled to commissions; specifically, said officers failed to disclose all of its sales to Prodelin by not sending all invoices of such sales to Plaintiff and by not including such sales in commission justification statements sent by Defendant to Plaintiff.
>
> c. [S]aid officers had superior knowledge of such information, knowledge that was confidential to the Defendant, and to which the Plaintiff had no access except to trust the Defendant and its officers to supply information in the form of invoices and commission justification statements to show Plaintiff that he was being paid commissions on all sales to which he was entitled.
>
> d. [E]ven if no fiduciary relationship existed between the parties, the Defendant's officers had a duty to disclose such material information to Plaintiff for the reasons described in the subparagraphs above . . . .

(Pl. Mt. to Am. ¶ 2, sub-par. 22).

Defendant contends that Plaintiff's allegations of a fiduciary relationship and duty to disclose create a new theory of recovery for Plaintiff. (Def. Mem. in Opp. to Pl. Mt. to Am. at 5-

6).  Defendant also contends that Plaintiff has failed to "describe the scope" of the parties' alleged fiduciary relationship, as well as "how it arose, or the particulars of how it was breached."  (*Id.*).  As a result of Plaintiff's alleged failure to more fully explain its allegations, Defendant maintains that it will be prejudiced because it will not have the ability to uncover the substance of the allegations through discovery. (*Id.*).

The Court notes that Plaintiff's allegations are made within the context of his existing cause of action for fraud.  Plaintiff is not seeking to allege a new cause of action for breach of fiduciary duty, or some other new cause of action.  Thus, the Court is not convinced that Plaintiff's allegations create what Defendant characterizes as a  "new theory of recovery." However, even if Plaintiff's allegations did create a new theory of recovery, the Court is also not convinced that such allegations would require Defendant to gather and analyze facts that it has not already considered.  *Johnson*, 785 F.2d at 509.  Plaintiff's proposed allegations arise from the same factual scenario surrounding the parties' relationship that Plaintiff has maintained all along, specifically, that Plaintiff was a sales representative for Defendant, and that as part of the relationship, Defendant was required to report to Plaintiff certain sales information upon which his commission payments were based. (Compl. ¶¶ 22, 23; Am. Compl. ¶ 23).  Plaintiff's re-characterization of the parties' relationship as a fiduciary relationship, accompanied by a duty to disclose, does not alter or add to the material facts upon which Plaintiff's claim is based.  The Court therefore agrees with Plaintiff that there is nothing new about Plaintiff's allegations for Defendant to discover.  (Pl. Rep. to Def. Mem. in Opp. to Pl. Mt. to Am. at 2-3).  Accordingly, the Court finds that Plaintiff's proposed amendment to his fraud claim, which alleges that a fiduciary relationship existed between the parties and that Defendant owed Plaintiff a duty to

disclose certain material sales information, is not prejudicial to the Defendant.

Defendant also objects to the portion of Plaintiff's proposed amendment that circumscribes the time frame of the alleged fraud to "September 2003 . . . through . . . December 7, 2004." (Def. Mem. in Opp. to Pl. Mt. to Am. at 6). Defendant contends that it is prejudiced by Plaintiff's time frame allegation because "it did not know when it took discovery that [Plaintiff's] fraud claim . . . allegedly centered on the [time frame Plaintiff now alleges]." (*Id*.).

Defendant was put on notice when Plaintiff filed his initial complaint that Plaintiff's suit arose out of events "[f]rom June 2000 until December 7, 2004, [when] Plaintiff served as a manufacturer's sales representative for the Defendant." (Compl. ¶ 3). The parties engaged in discovery with regard to the events that occurred during Plaintiff's employment with Defendant, which included September 2003 through December 7, 2004. (Def. Mem. in Opp. to Pl. Mt. to Am. at 1-2). In fact, Plaintiff contends that "[t]he time frame during which the fraud occurred became clear to Plaintiff only through discovery." (Pl. Rep. to Def. Mem. in Opp. to Pl. Mt. to Am. at 3). Defendant was privy to the same information in discovery as Plaintiff, therefore it is unclear what new information, if any, Defendant would uncover by examining Plaintiff's fraud claim through the lense of a narrower time frame. Therefore, the Court finds that Plaintiff's request to narrow the time frame of his fraud claim is not prejudicial to Defendant.

**c. Whether Plaintiff's Motion to Amend Complaint is Futile**

Defendant also contends that Plaintiff's motion to amend complaint should be denied because the motion is futile. (Def. Mem. in Opp. to Pl. Mt. to Am. at 8). Defendant argues that "even if [the complaint] included [Plaintiff's] proposed amendments, his claims remain legally insufficient for several reasons." (*Id*.).

The Court notes that many of Defendant's arguments that Plaintiff's proposed amendments are futile because they are "legally insufficient" were also raised by Defendant in support of its motion for summary judgment. (Def. Mem. in Supp. of Mt. for Sum. Judg. at 7-11). Additionally, Plaintiff's responses to Defendant's arguments relate back to Plaintiff's responses to Defendant's motion for summary judgment. (Pl. Rep. to Def. Mem. in Opp. to Pl. Mt. to Am. at 4-6; Pl. Pl. Mem. in Opp. to Mt. for Sum. Judg. 12-14, 16-18). Thus, Defendant's arguments that Plaintiff's amendments are futile and Plaintiff's responses to those arguments hinge on whether Plaintiff's claims will survive summary judgment, and as a result, such arguments and responses involve matters beyond the pleadings. Therefore, where matters beyond the pleadings are considered in determining whether Plaintiff's proposed amendments are futile, the Court will examine Plaintiff's proposed amendments under summary judgment review. *See, e.g.,* Fed.R.Civ.P. 12(b)(6)("If on a motion . . . to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

Accordingly, where summary judgment review impacts whether or not Plaintiff's motion to amend is futile, the rules for summary judgment apply, and the party opposing summary judgment must come forward with sufficient evidence to demonstrate that a reasonable jury could find for him. *Anderson v. Liberty Lobby*, 477 U.S. 242, 253 (1986). Where a party moving for summary judgment supports the motion by affidavits, the adverse party may not rest upon the mere allegations or denials of his pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 of the Federal Rules of Civil

Procedure and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). In considering matters under summary judgment review, the Court views the facts and inferences in the light most favorable to the adverse party. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980).

### i. Plaintiff's *Quantum Meruit* Claim

Defendant argues that Plaintiff's attempt to preserve his *quantum meruit* claim by removing any reference to an express contract is futile because Plaintiff admitted through pleadings and deposition testimony that an express contract governed his dispute with Defendant. (*Id*. at 11-12). Defendant maintains that "[r]egardless of whether [Plaintiff] specifically incorporated the allegations [of an express contract] in the *quantum meruit* cause of action or not, [Plaintiff's] express admissions preclude recovery on a *quantum meruit* claim." (*Id*.).[1]

Under North Carolina law, a plaintiff may "recover in *quantum meruit* upon a showing that '(1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously.'" *Carolantic Realty, Inc. v. Matco Group, Inc.*, 151 N.C. App. 464, 470-71, 566 S.E.2d 134, 138-39 (2002) (quoting *Environmental Landscape Design v. Shields*, 75 N.C.App. 304, 306, 330 S.E.2d 627, 628 (1985)). Additionally, where the terms of an express contract govern a dispute, a claim for *quantum meruit*, which is an

---

[1]Defendant argues that "the determination of when a *quantum meruit* claim may be plead in the alternative to a breach of contract claim is a matter of federal case law concerning when Federal Rule of Civil Procedure 8(a) permits such alternative pleading." (Def. Mem. in Opp. to Pl. Mt. to Am. at 11, n. 2). The question of whether Plaintiff may plead *quantum meruit* as an alternative claim to breach of contract is a matter of substantive law rather than procedural law. The Court reminds Defendant that in a diversity case, state law governs substantive determinations. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). Plaintiff's claims were brought under North Carolina law, therefore North Carolina law governs the determination of whether Plaintiff may plead *quantum meruit* as an alternative claim to breach of contract.

equitable remedy based on a theory of implied contract, is inappropriate. *Id.* at 471, 566 S.E.2d at 139. However, North Carolina courts have long permitted parties to plead *quantum meruit* as an alternative claim to breach of contract where the facts are in dispute as to whether a contract in fact existed, or where, even though the parties had executed an express contract, the alleged services provided by the plaintiff to the defendant arose from conduct that was not covered by the express contract. *See Thormer v. Lexington Mail Order Co.*, 241 N.C. 249, 253, 85 S.E.2d 140, 143 (1954) (holding that where plaintiff fails to prove a contract existed between himself and defendant, recovery in *quantum meruit* is permissible if defendant nonetheless accepted services rendered by plaintiff); *Carolantic Realty*, 151 N.C. App. at 471; 566 S.E.2d at 139 (holding that recovery in *quantum meruit* is permissible for services rendered by plaintiff that were not covered by the terms of the contract between the parties).

In response to Defendant's motion for summary judgment on his *quantum meruit* claim, Plaintiff contends that despite his claim that a contract existed between himself and Defendant that required Defendant to pay him a 5% sales commission, there is nevertheless "a wide divergence of opinions between the parties as to the terms of the original agreement, and as to what, if any, modifications or novations were made throughout the relationship. . . . [Therefore] a reasonable juror may conclude that the parties had no meeting of the minds on the issue of what commission rates Defendant would pay the Plaintiff for some or all of [the sales at issue]." (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 16). In support of his contention, Plaintiff has come forward with the deposition testimony of Defendant's agent, Daniel Althaus. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg., Ex. D., ("Deposition of Daniel Althaus")). Althaus was present on behalf of Defendant at the time Plaintiff and Defendant made their initial oral agreement

regarding Plaintiff's sales commission rate. (*Id*. at 1). During his deposition, Althaus stated that the parties agreed that Plaintiff's rate of commission would "start out at 5 percent" but would vary at times depending on various market factors. (*Id*. at 1-3). Althaus' claim that Plaintiff's commission rate was variable directly contradicts Plaintiff's claim that Defendant agreed to pay him a non-variable 5% commission rate. (Pl. Aff. ¶ 1).

Plaintiff also concedes that "[t]here [was] no evidence produced in discovery to show that the parties ever reached an agreement as to what commissions Plaintiff would receive for sales after termination [of Plaintiff's relationship with Defendant] for sales made thereafter." (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 17). Plaintiff, however, contends that "a *quantum meruit* claim would be viable on this issue if both parties had an expectation that Plaintiff would receive some payment for sales after termination." (*Id*.). In support of this argument, Plaintiff has come forward with the Manufacturer's Representative Agreement that Defendant presented to Plaintiff. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg., Ex. B. ("Sales Agreement")). Plaintiff argues that, even though he did not sign the agreement, paragraph 9 demonstrates that Defendant had some expectation to pay commissions to Plaintiff after Plaintiff's termination. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 17; Sales Agreement at ¶ 9(b)). The relevant language Plaintiff points to states, "[i]n the event of termination of this Agreement for reasons other than breach or default by [Plaintiff], [Defendant] agrees to pay commissions on the orders tendered by [Plaintiff] which have not been fulfilled within the term of the Agreement and which are actually performed and payment received by [Defendant] within 10 months after the effective date of termination." (Sales Agreement at ¶ 9(b)). Additionally, Plaintiff has come forward with the deposition testimony of his industry expert, Willis Fitch, who stated that a sales representative in

Plaintiff's position can expect to receive post-termination commission payments. (Pl. Mem. in

Opp. to Def. Mt. for Sum. Judg., Ex. H., at 87 ("Deposition of Willis Fitch")). Plaintiff also

points to his own affidavit, which states that he expected to receive post-termination commission

payments. (Pl. Aff. ¶¶ 9,10).

     After examining Plaintiff's *quantum meruit* claim in light of his proposed amendment,

which removes any reference to an express contract under the claim, the Court finds that Plaintiff

has presented sufficient evidence for the claim to survive Defendant's motion for summary

judgment.[2] Plaintiff has presented evidence that the parties dispute the rate of commission to

which they agreed Defendant would pay Plaintiff for his sales efforts. Plaintiff has also

presented evidence that the parties did not reach an agreement concerning post-termination

commission payments to which Plaintiff may have had an expectation. Such evidence

establishes both of the traditional factual scenarios in which North Carolina courts have

permitted *quantum meruit* to be plead as an alternative claim to breach of contract. *Thormer*, 241

N.C. at 253, 85 S.E.2d at 143; *Carolantic Realty*, 151 N.C.App. at 470, 566 S.E.2d at 139.

Based on the Court's finding that Plaintiff has presented sufficient evidence to survive summary

judgment on his *quantum meruit* claim, the Court also finds that Plaintiff's proposed amendment

is not futile.

## ii. Plaintiff's Fraud Claim

---

[2] Defendant contends that the case *Davidson Cotton Mex. v. Tekmatex, Inc.*, No. 3:03CV479, 2006 WL 2828841 (W.D.N.C. Sept. 29, 2006) is controlling in this case. (Def. Mem. in Opp. to Pl. Mt. to Am. at 11). In *Davidson Cotton*, the Court dismissed the plaintiff's *quantum meruit* claim because the plaintiff's complaint incorporated allegations of an express contract by reference under its *quantum meruit* claim. *Id.* at *4. However, unlike the Plaintiff in this case, the plaintiff in *Davidson Cotton* made no effort to correct its mistake by motion to amend or otherwise. Therefore, the Court finds the two cases distinguishable.

Defendant argues that Plaintiff's proposed amendment to his fraud claim is futile because even if the Court grants Plaintiff's Motion to Amend, Plaintiff has still failed to allege sufficient facts to allow him to recover for fraud. (Def. Mem. in Opp. to Pl. Mt. to Am. at 8).  Defendant maintains that, in order to recover for fraud, Plaintiff must demonstrate that Defendant owed him a duty distinct from a contractual duty. (*Id*.).  Defendant argues that even if it owed Plaintiff a duty to disclose the allegedly material sales information, such "duty is inextricably intertwined with - and based on the same facts relating to - [Defendant's] contractual duty to pay [Plaintiff's] commissions." (*Id*.).  Plaintiff responds to Defendant's charge by arguing that "an allegation that the Defendant fraudulently concealed sales [information] by not sending invoices or other material information to Plaintiff in order to avoid payment of commissions to Plaintiff is an allegation of a breach of duty separate and distinct from a breach of contract." (Pl. Rep. to Def. Mem. in Opp. to Pl. Mt. to Am. at 4).

The Fourth Circuit, applying North Carolina law, noted "[o]nly where a breach of contract also constitutes an 'independent tort' may tort actions be pursued." *Strum v. Exxon Co.*, 15 F.3d 327, 330 (4th Cir. 1994) (citing *Restatement (Second) of Contracts* § 355 (1981); *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297, 301 (1976); *Asheville Contracting Co. v. City of Wilson*, 62 N.C.App. 329, 303 S.E.2d 365, 373 (1983)).  The Fourth Circuit also noted that while a fraud claim "could constitute an independent tort . . . [t]he mere failure to carry out a promise in contract . . . does not support a tort action for fraud." (citing *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (1961); *In re Baby Boy Shamp*, 82 N.C.App. 606, 347 S.E.2d 848, 853 (1986)).

Plaintiff's proposed amendment to his fraud claim is premised on a theory of fraudulent

concealment and alleges that Defendant had a duty to disclose material sales information to Plaintiff due to a fiduciary relationship that existed between the parties. (Pl. Mt. to Am. ¶ 2, sub-par. 22). Under North Carolina law, in order to recover on a theory of fraudulent concealment, the concealed information "must relate to a material matter known by defendants which they had a legal duty to communicate to plaintiff, 'whether the duty arose from a relation of trust, from confidence, inequality of condition or knowledge, or other attendant circumstances.'" *Breeden v. Richmond Community College*, 171 F.R.D. 189, 196 (M.D.N.C. 1997) (quoting *Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962)). One of the instances in which a legal duty to disclose arises is when a fiduciary relationship exists between the parties. *Id*. North Carolina courts have declined to rigidly define "fiduciary relationship," and have stated that such relationship "'may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . [i]t extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'" *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). A finding of "[w]hether a fiduciary relationship exists is determined by the specific facts and circumstances of the case [and] [g]enerally 'the existence or nonexistence of a fiduciary duty [is] a question of *fact* for the jury.'" *Id*. at 665, 391 S.E.2d at 832 (quoting *HAJMM Co. v. House of Raeford Farms, Inc.*, 94 N.C. App. 1, 13, 379 S.E.2d 868, 875 (1989)) (emphasis in original).

In response to Defendant's Motion for Summary Judgment on Plaintiff's fraud claim,

Plaintiff has come forward with sales records that, Plaintiff asserts, demonstrate "Defendant made sales to Plaintiff's customer in 2004 of over $5,600,000.00 and only reported to Plaintiff and paid Plaintiff commissions on $1,874,462.90 of such sales." (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 14, Ex. A).  Plaintiff therefore concludes that the records show that "over $3,800,000.00 in sales were not reported that year by the Defendant to the Plaintiff on Defendant's commission justification statements." (*Id.*).  Plaintiff also contends that "[t]he relationship [between Plaintiff and Defendant] centers around the efforts of an independent sales representative who recruits a customer to purchase products from the manufacturer and receives a commission therefrom. . . . An independent sales representative has no way of determining the total sales made to the customer, and therefore cannot know the accuracy and completeness of the amount of commissions being paid by the manufacturer, unless the manufacturer fully and timely discloses the nature and amount of such sales to the customer produced by the sales rep." (*Id.* at 13-14).  Plaintiff therefore argues that "[t]his business relationship cannot exist and/or flourish unless the courts recognize that principals in such relationships have a fiduciary duty to disclose such information to their agents, their independent sales representatives." (*Id.* at 14).

The Court notes that although the determination of whether a fiduciary relationship exists is normally a question for the jury, North Carolina courts have specifically held that a fiduciary relationship does not extend to certain relationships as a matter of law.  For example, North Carolina courts have held that a fiduciary relationship is generally not found in an employer-employee context. *Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 708 (2001).  Additionally, North Carolina courts have held that a fiduciary relationship does not exist between two "mutually interdependent businesses." *Tin Originals*, 98 N.C. App. at 666, 391 S.E.2d at

833.  However, the Court is not aware of, and the parties have not cited, a North Carolina case that specifically addresses whether, as Plaintiff has alleged, the relationship between a sales representative and manufacturer creates a fiduciary relationship.  Furthermore, the Court does not believe that the holdings in *Dalton* and *Tin Originals* accurately capture the relationship and circumstances alleged in this case.

A case that is more analogous to the one at bar is *Vanwyck Textile Systems, B.V. v. Zimmer Machinery America, Inc.*, which was decided in this District, and involved a plaintiff-manufacturer's South Carolina breach of fiduciary duty claim against a defendant-sales representative. *Vanwyck Textile Systems, B.V. v. Zimmer Machinery America, Inc*., 994 F.Supp. 350, 361-67 (W.D.N.C. 1997).  The jury returned a verdict for the plaintiff, and defendant moved for judgment as a matter of law on plaintiff's fiduciary duty claim on the grounds that no fiduciary relationship existed between the parties.  *Id*. at 365-66.  The Court, applying South Carolina law, held that "the respective roles of the parties as manufacturer and promoter/seller do not prevent the relationship from being properly described as fiduciary; nor does the fact that this relationship, like all business relationships, involves economic risks and the impact of changing business circumstances. . . . [W]hich party is in a superior position is a matter of evidence and not *a priori* category."  *Id*. at 367.

Therefore, with the *Vanwyck* holding in mind, and considering the general preference in North Carolina that fiduciary determinations are to be made by the jury, as well as viewing the evidence in the light most favorable to Plaintiff, the Court will not determine at this stage in the proceedings whether a fiduciary relationship existed between Plaintiff and Defendant and will permit the issue to go to trial.  Accordingly, as to Defendant's argument that it is entitled to

summary judgment on Plaintiff's fraud claim on the grounds that Plaintiff has failed to demonstrate that Defendant owed Plaintiff a duty distinct from a contractual duty, the Court finds that Plaintiff has presented sufficient evidence to survive summary judgment. Based on this finding, the Court also finds that Plaintiff's proposed amendment to his fraud claim is not futile.[3]

Defendant makes a second argument that Plaintiff's proposed amendment to his fraud claim is futile on the grounds that Plaintiff's proposed amendment still fails to plead fraud with sufficient particularity. (Def. Mem. in Opp. to Pl. Mt. to Am. at 9). The Court notes that this argument, unlike Defendant's previous arguments that Plaintiff's proposed amendments are futile, does not involve matters beyond the pleadings. Therefore, as to Defendant's specific argument that Plaintiff's amendment to his fraud claim is futile because Plaintiff failed to plead fraud with sufficient particularity, the Court will examine Plaintiff's proposed amendment under the standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.[4] The Court notes that a 12(b)(6) motion will be granted if, after

---

[3]Defendant also argues that "to the extent that [Plaintiff] intends to use the proposed fraud allegations to bolster his unfair and deceptive trade practices claim, such efforts would also be futile" because Plaintiff failed to distinguish his breach of contract claim from his unfair and deceptive trade practices claim. (Def. Mem. in Opp. to Pl. Mt. to Am. at 9, n.1). Under North Carolina law, "[i]t is axiomatic that proof of fraud itself constitutes a violation of the prohibition against unfair and deceptive trade practices." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E.2d 174, 180 (1986). Therefore, having found that Plaintiff has come forward with sufficient evidence to survive summary judgment on his fraud claim, and also having found that his proposed amendment to such claim is not futile, the Court also finds that Plaintiff has come forward with sufficient evidence to survive summary judgment on his unfair and deceptive trade practices claim. Therefore Plaintiff's proposed amendment is not futile in regard to that claim.

[4] The Court notes that Defendant also raises this argument in support of his motion for summary judgment. (Def. Mem. in Supp. of Mt. for Sum. Judg. at 9-10). However, even though Defendant's argument was raised in support of summary judgment, it did not delve into matters beyond the sufficiency of the pleadings. (*Id.*). Therefore, such argument would be more properly construed as an

22

accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all

reasonable factual inferences from those facts in plaintiff's favor, it appears certain that the

plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Greenhouse*

*v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004).  A motion to dismiss should be granted

if the complaint itself fails to allege the elements for a cause of action or facts sufficient to

support such elements. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Moreover, "allegations must be stated in terms that are neither vague nor conclusory."  *Estate*

*Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220 (4th Cir. 1994).

The oft-cited case *Breeden v. Richmond Community College* states the requirements for

pleading fraudulent concealment under both North Carolina law and under the heightened

standards of Federal Rule of Civil Procedure 9(b). *Breeden v. Richmond Community College*,

171 F.R.D. 189, 194-96 (M.D.N.C. 1997).  As that court stated, under North Carolina law, the

Plaintiff must allege the following essential elements to state a claim for fraudulent concealment:

> (1) a false . . . concealment of a material fact, (2) that was reasonably calculated to
> deceive, (3) which was made with the intent to deceive, (4) that did in fact
> deceive, and (5) resulted in damage. . . . And [in the] case of fraudulent
> concealment or nondisclosure, plaintiff must additionally allege that all or some of
> the defendants had a duty to disclose material information to him as silence is
> fraudulent only where there is a duty to speak.

*Id*. at 194 (citations omitted).

---

argument in support of a motion for judgment on the pleadings under Federal Rule of Procedure 12(c),
rather than as in support of a motion for summary judgment.  This distinction is immaterial, however, as
the Court will examine the merits of Defendant's argument with regard to Plaintiff's motion to amend
and will apply the same standard of review that it would have had it examined the argument with regard
to Defendant's motion for summary judgment. *See Burbach Broadcasting Co. of Del. v. Elkins Radio
Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002) (stating that a motion for judgment on the pleadings under
Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6)).

In addition to meeting the requirements for pleading fraudulent concealment under North Carolina law, a plaintiff in Federal Court must also comply with the heightened pleading requirements of Federal Rule of Procedure 9(b). *Id*. at 195. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity . . . ." The *Breeden* court stated that,

> In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing form such reliance.

*Id*. at 195-96 (citations omitted).

The Court notes, however, that "[w]hile facts constituting the fraud must be alleged with particularity, there is no requirement that any precise formula be followed or that any certain language be used." *Carver v. Roberts*, 78 N.C.App. 511, 513, 337 S.E.2d 126, 128 (1985). Additionally, "[a]lthough Rule 9(b) requires that the requisite factual allegations be pled with particularity, this mandate 'does not contradict the theory of notice pleading embraced by the the Federal Rules in general, and Rule 8, in particular.'" *Nakell v. Liner Yankelevitz Sunshine & Regenstrief, LLP*, 394 F.Supp.2d 762, 772 (M.D.N.C. 2005) (quoting *Angell v. Kelly*, 336 F.Supp.2d 540, 549 (M.D.N.C. 2004)). And significantly, as the Fourth Circuit has stated, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare

a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts."

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Examining Plaintiff's proposed amendment to his fraud claim in light of these requirements and holdings, the Court is satisfied that Plaintiff's proposed amendment pleads fraud with sufficient particularity. Plaintiff's proposed amendment, which the Court quoted in part above, combined with his existing pleadings, clearly sets-out all of the elements necessary to successfully plead fraud under both North Carolina law and Federal law. (Pl. Mt. to Am. ¶ 2, sub-par. 21 - 25). Moreover, as noted above in regards to Defendant's argument that the proposed amendment is prejudicial, the Court is satisfied that Plaintiff's existing pleadings sufficiently put Defendant on notice of the factual circumstances surrounding the claim. Based on this finding, the Court also finds that Plaintiff's proposed amendment to his fraud claim is not futile.

In sum, the Court does not find any portion of Plaintiff's proposed second amended complaint to be prejudicial to Defendant, motivated by bad faith on the part of the Plaintiff, or futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Therefore, Plaintiff's Motion to Amend Complaint is <u>granted</u>.

## 2. Defendant's Motion to Strike Plaintiff's Amended Reply to Counterclaims

Defendant's Motion to Strike Plaintiff's Amended Reply to Counterclaims arises due to the following sequence of procedural occurrences. On April 12, 2006, the Magistrate Judge originally assigned to this case scheduled trial to commence "beginning on or after the first Civil Trial Session in March 2007." (Pretrial Order and Case Management Plan at 8). On October 11, 2006, Plaintiff filed his first Amended Complaint after obtaining Defendant's consent. On

October 30, 2006, Defendant filed an Amended Answer to Plaintiff's Amended Complaint and Counterclaims against Plaintiff. On November 29, 2006, Plaintiff filed a Motion to Dismiss and Reply to Defendant's Counterclaims. On December 15, 2006, Plaintiff filed an Amended Reply to Counterclaims and Withdrawal of Motion to Dismiss.

Defendant contends that the Court should strike Plaintiff's Amended Reply to Counterclaims because Federal Rule of Civil Procedure 15(a) did not permit Plaintiff to amend his reply to counterclaims as of right where the case was placed on the Court's trial calendar by the Magistrate's Pretrial Order. (Def. Mem. in Supp. of Mt. to Str. at 2). Plaintiff responds by arguing that the case was not placed on the Court's trial calendar by the Magistrate's Pretrial Order, and as such, Rule 15(a) entitled him to amend his reply to counterclaims as of right. (Pl. Mem. in Opp. to Def. Mt. to Str. at 2). Plaintiff further argues that "Defendant's interpretation of pre-trial orders in this District would significantly curtail the effects of Federal Rule of Civil Procedure 15(a)," and that "Pre-Trial Orders in this [D]istrict should not be used as a means to prevent parties from filing amended pleadings as of right in [this District]." (*Id.*).

Federal Rule of Civil Procedure 15(a) states in relevant part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

Federal Rule of Civil Procedure 16(b), pursuant to Federal Rule of Civil Procedure Rule 26(f) and Local Rule 16.1 of this District, authorizes a Magistrate Judge to enter a scheduling order which sets the date for trial.

The Magistrate Judge's Pretrial Order in this case provided only a prospective trial date, as indicated by the statement in the Pretrial Order that trial would commence "*on or after* the first Civil Trial Session in March 2007." (Pretrial Order and Case Management Plan at 8) (emphasis added). Furthermore, in this Court, a case is not placed upon the trial calendar until it is set by the Clerk of Court's office pursuant to the Court's instruction. Ordinarily, approximately 30 days before the prospective trial date set by the Pretrial Order, the Court will instruct the Clerk of Court's office to place a case upon the trial calendar *if* the Court has resolved all outstanding dispositive motions. On December 15, 2006, the date Plaintiff filed his Amended Reply to Counterclaims, the Court had not resolved the outstanding dispositive motions in this case, and had not instructed the Clerk of Court's office to place the case upon the trial calendar for any term of court. The Court also notes that Plaintiff's original reply to counterclaims was a pleading to which no responsive pleading is permitted, and Plaintiff's amendment was filed within 20 days of serving the original reply. Therefore, the Court finds that Plaintiff was permitted to amend his reply to counterclaims as of right under Rule 15(a). As such, Defendant's Motion to Strike Plaintiff's Amended Reply to Counterclaims is <u>denied</u>.

**B.      Summary Judgment**

Defendant now moves for summary judgment on all of Plaintiff's claims. Defendant argues that "Plaintiff has failed to plead the requisite elements of either a fraud or an unfair and deceptive trade practice claim and has failed to plead fraudulent concealment with particularity," that "Plaintiff's *quantum meruit* claim is precluded by the references to an express contract between the parties that are specifically incorporated into that claim," and that "Plaintiff's fraud, breach of contract, and North Carolina Commissions Act causes of action are each barred by the

27

three year statute of limitations for those claims." (Def. Mt. for Sum. Judg. at 1). In a separate Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim, Defendant argues that it also entitled to summary judgment on such claim because Plaintiff's "unclean hands" bar him from equitable relief. (Def. Mt. For Sum. Judg. on Pl. *Quantum Meruit* Cl. at 1).

Plaintiff likewise moves for summary judgment on all of Defendant's counterclaims. Plaintiff argues that "Defendant has failed to plead the requisite elements of either a fraud or unfair and deceptive trade practice claim and has failed to plead fraud with particularity," that "Defendant has failed to produce any evidence in discovery that: Plaintiff actually made any fraudulent statement, or that Defendant reasonably relied to his detriment on any alleged misrepresentations made by Plaintiff, or that all of the elements of an unfair and deceptive trade practices claim are met by Defendant," and that "Defendant's counterclaim/affirmative defense for offset and for alleged overpayment of commissions to Plaintiff is barred, at least in part, by the three year statute of limitations for contract related claims." (Pl. Mt. for Sum. Judg. at 1).

**1. Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to

overcome summary judgment.  *Id.* at 249-50.  Moreover, when the movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion.  *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980).  Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).  When considering cross-motions for summary judgment, a court evaluates each motion separately using the standard set forth above.  *Local 2-1971 of Pace Int'l Union v. Cooper*, 364 F. Supp. 2d 546, 554 (W.D.N.C. 2005).

## 2.      Cross Motions for Summary Judgment

As noted above, a federal court sitting in diversity must apply the law of the state in which the suit was brought.  *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992).  Plaintiff's suit was brought  in North Carolina, and all of Plaintiff's claims and Defendant's counterclaims are based on North Carolina law.  Accordingly, North Carolina law governs the parties' cross motions for summary judgment.


### a.      Defendant's Motion for Summary Judgment and Motion for Summary Judgment

**on Plaintiff's *Quantum Meruit* Claim**

### i. Defendant's Motion for Summary Judgment Based on Plaintiff's Pleadings

Defendant argues that it is entitled to summary judgment on several of Plaintiff's claims because Plaintiff's pleadings contain omissions or admissions that are fatal to Plaintiff's claims. (Def. Mem. in Sup. of Mt. for Sum. Judg. at 7-11). Specifically, Defendant contends that "Plaintiff has failed to allege sufficient extra-contractual factors to maintain either a fraud claim or an unfair and deceptive trade practices claim," that "Plaintiff has failed to plead fraud with sufficient particularity in order to maintain a claim," and that "Plaintiff's [*quantum meruit*] claim is precluded by his claim of a valid and existing contract between the parties." (*Id.*).

Defendant's arguments concerning Plaintiff's allegedly defective pleadings are based on Plaintiff's Complaint and Amended Complaint. Plaintiff, in an apparent response to Defendant's arguments, filed a Motion to Amend. Defendant raised its arguments a second time against Plaintiff's Motion to Amend. (Def. Mem. in Opp. to Pl. Mt. to Am. at 8-13). The Court addressed these arguments in relation to Plaintiff's Motion to Amend and found them unpersuasive, *supra*. As such, Defendant's motion for summary judgment based on Plaintiff's pleadings is <u>denied</u> as moot.

### ii. Defendant's Motion for Summary Judgment Based on the North Carolina Statute of Limitations

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract, fraud, and North Carolina Sales Commission Protection Act claims because they are barred by the three year North Carolina statute of limitations applicable to each claim. (Def. Mem. in Sup. of Mt. for Sum. Judg. at 12).

Generally, "[w]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact. . . . However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes a question of law, and summary judgment is appropriate." *Jack H. Winslow Farms, Inc. v. Dedmon*, 171 N.C.App. 754, 756, 615 S.E.2d 41, 43 (2005) (citing *McCarver v. Blythe*, 147 N.C.App. 496, 498, 555 S.E.2d 680, 682 (2001)). The parties' arguments and alleged facts are similar for all three of Plaintiff's claims regarding the statute of limitations. However, because the applicable law for Plaintiff's breach of contract and North Carolina Sales Commission Protection Act claims differs from the applicable law for Plaintiff's fraud claim, the Court will analyze the claims separately.

Under North Carolina law, a breach of contract claim has a statute of limitations period of three years. N.C. GEN. STAT. § 1-52(1). The statute of limitations period for a claim under the North Carolina Sales Commission Protection Act, N.C. GEN. STAT. §§ 66-190, *et seq.*, a statutory cause of action with no specific limitations period noted in the statute that created it, is also three years. N.C. GEN. STAT. § 1-52(2).

Defendant's argument that Plaintiff's breach of contract and North Carolina Sales Commission Protection Act claims are barred by the statute of the limitations is analogous to a similar argument made by a defendant in *Stellar Insurance Group, Inc. v. Central Companies, LLC*, a recent case in this District. *Stellar Insurance Group, Inc. v. Central Companies, LLC*, No. 2:06cv11, 2006 WL 2862218, at *9 (W.D.N.C. Sept. 12, 2006).[5] In that case, plaintiff

_____

[5] The decision cited, *Stellar Insurance Group, Inc. v. Central Companies, LLC*, No. 2:06cv11, 2006 WL 2862218 (W.D.N.C. Sept. 12, 2006), is the Magistrate Judge's Memorandum and Recommendation on the defendant's motion to dismiss. The District Court adopted the Magistrate's

brought a breach of contract claim and statutory claim under the North Carolina Wage and Hour Act for defendant's alleged failure to pay commissions and underpayment of commissions. *Id*. at *1. Defendant sought dismissal of plaintiff's North Carolina Wage and Hour Act claim on the grounds that such claim was barred by the two-year statute of limitations. *Id*. at *9. In assessing Defendant' argument, the Court noted that: "[w]ith deferred compensation or commissions, an employee's right to receive such compensation may accrue in the year earned, but the cause of action may not accrue until the employer fails to tender the compensation or prospectively informs the wage earner that no more payments will be forthcoming, which may be years after termination." *Id*. at *10. The Court concluded that "any *cause of action* that accrued on or before May 7, 2004, [was] barred [where Plaintiff filed his claim on May 8, 2006], [however] [p]laintiff . . . still has the ability to assert causes of action that accrued after May 8, 2004, for compensation which he was due to be paid on or after that date, but which defendants refused to pay on or after those dates." *Id*. (emphasis in original). The Court cited persuasive authority for its finding:

> Each time [defendant] failed to pay [plaintiff] [his commission], a separate breach of the agreement occurred. Therefore, a separate cause of action accrued at the time of each breach. [Defendant's] obligation under the agreement is similar to an obligation payable by installments. Where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due.

*Id*. (citing *Anderson v. A.M.W., Inc.*, 266 Neb. 238, 244 (2003)).

The Court also found the Nebraska Supreme Court's decision to be in accordance with analogous North Carolina law:

---

findings in full in its order on the defendant's motion. *Stellar Insurance Group, Inc. v. Central Companies, LLC*, No. 2:06cv11 (W.D.N.C. Oct. 3, 2006).

Generally [the] statute of limitations do[es] not begin to run until the claim accrues, and the claim does not accrue until the injured party is at liberty to sue or is entitled to institute an action.

. . .

Generally, where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due.

*Id.* (citing *Martin v. Ray Lackey Enterprises, Inc.*, 100 N.C.App. 349, 356-57, 396 S.E.2d 327, 332 (1990)).

This Court finds the Court's reasoning and analysis in *Stellar Insurance Group* to be persuasive in this case. Like the plaintiff in *Stellar Insurance Group*, Plaintiff in this case is also seeking recovery of unpaid and underpaid commissions from Defendant that allegedly occurred on numerous occasions over a span of several months or years. Thus, each alleged non-payment or underpayment by the Defendant counts as a separate potential cause of action against Defendant. Some of these potential causes of action may be barred by the statute of limitations, while others may not. The Plaintiff filed his original complaint on January 27, 2006. Thus, any causes of action for breach of contract and violation of the North Carolina Sales Commission Protection Act that accrued on or before January 26, 2003, are barred by the statute of limitations. Conversely, any causes of action for breach of contract and violation of the North Carolina Sales Commission Protection Act that accrued on or after January 27, 2003 are permitted.

The parties dispute, however, when Plaintiff's first cause of action accrued for purposes of Plaintiff's breach of contract and North Carolina Sales Commission Protection Act claims. Defendant contends that Plaintiff's first cause of action accrued on May 16, 2002, a date upon which Plaintiff acknowledged that Defendant did not pay him a commission for the sale of an

item to the client, Prodelin. (Def. Mem. in Supp. of Mt. for Sum. Judg. at 14). Plaintiff contends that none of his causes of action accrued until Fall 2003, at the earliest. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 18). Plaintiff argues that Defendant's failure to pay a commission on May 16, 2002 was an isolated incident at the time, and involved only on a single part that Plaintiff sold to Prodelin for a price of $134.64. (*Id*. at 19).

Thus, pursuant to the general rule on statute of limitations questions, where the facts are in dispute as to when any cause of action accrued for Plaintiff's breach of contract and North Carolina Sales Commission Protection Act claims, the jury shall resolve the matter. *Jack H. Winslow Farms*, 171 N.C.App. at 756, 615 S.E.2d at 43. Since the facts are in dispute as to whether *any* of Plaintiff's causes of action accrued before the statutory time limit, Defendant's motion for summary judgment on the grounds that Plaintiff's breach of contract and North Carolina Sales Commission Protection Act claims are barred by the statute of limitations is denied.

For Plaintiff's fraud claim, the rule in North Carolina is that such claim must be filed within three years of the injured party's "discovery . . . of the facts constituting the fraud." N.C. GEN. STAT. § 1-52(9). North Carolina courts have interpreted "discovery" under the statutory period for fraud to mean "either actual discovery or when the fraud should have been discovered in the exercise of reasonable diligence." *State Farm Fire and Cas. Co. v. Darsie*, 161 N.C.App. 542, 547, 589 S.E.2d 391, 396 (2003) (citing *Grubb Properties, Inc. v. Investment Co.*, 101 N.C.App. 498, 501, 400 S.E.2d 85, 88 (1991)). In accordance with North Carolina courts' general finding on statute of limitations questions, the North Carolina Court of Appeals has held that, "a court's determination of reasonable diligence under N.C. Gen.Stat. § 1-52(9) may either

be a matter of fact or a matter of law depending on the circumstances of the underlying case." *Id.* at 548, 589 S.E.2d at 397 (citing *Grubb,* 101 N.C.App. at 501, 400 S.E.2d at 88). Additionally, the North Carolina Court of Appeals stated, "[o]rdinarily, when fraud should be discovered in the exercise of reasonable diligence is a question of fact of the jury, particularly when the evidence is inconclusive or conflicting. . . . However, where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the fraud but failed to do so, the absence of reasonable diligence is established as a matter of law." *Id.* (citations omitted).

Defendant contends that Plaintiff should have discovered that Defendant was not paying Plaintiff a full 5% commission, and hence should have discovered the facts constituting the alleged fraud, on May 16, 2002 when Defendant did not pay Plaintiff a commission for the sale of a an item to Prodelin. (Def. Mem. in Supp. of Mt. for Sum. Judg. at 14). Plaintiff contends, however, that Defendant's non-payment on May 16, 2002 was an isolated incident at the time, and the facts constituting Defendant's fraud did not occur until fall 2003. (Pl. Mem. in Opp. to Def. Mt. for Sum. Judg. at 18-19). Thus, in light of the conflicting facts alleged by the parties, the determination of when Plaintiff's fraud claim accrued will be a question for the jury. Therefore, Defendant's motion for summary judgment on the grounds that Plaintiff's fraud claim is barred by the statute of limitations is <u>denied</u>.

### iii. Defendant's Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim

Defendant brings a separate motion for summary judgment on Plaintiff's *Quantum Meruit* claim on the equitable defense of unclean hands. (Def. Mem. in Sup. of Mt. for Sum. Judg. on Pl. *Q.M.* Cl. at 1-2).

North Carolina courts have long recognized that "one who comes to court with unclean hands is barred from any equitable relief." *Layman v. C.C.F. of Georgia, Inc.*, 161 F.Supp.2d 666, 670 (W.D.N.C. 2001) (citing *Sherner v. Sear*, 92 N.C. 148 (1885); *Swan Quarter Farms, Inc. v. Spencer*, 133 N.C.App. 106, 109-10, 514 S.E.2d 735, 738 (1999)). "Equity is for the protection of innocent persons and is a tool used by the court to intervene where injustice would otherwise result." *Id.* (citing *Swan Quarter Farms*, 133 N.C.App. at 110, 514 S.E.2d at 738).

Defendant argues that Plaintiff is barred from asserting his equitable claim of *quantum meruit* because Plaintiff admitted that, despite his representations to Defendant to the contrary, he "he had no intention of signing" the written Manufacturer's Representative Agreement ("Written Agreement") that Defendant presented to Plaintiff in late 2003 or early 2004. (Def. Mem. in Sup. of Mt. for Sum. Judg. on Pl. *Q.M.* Cl. at 2). Plaintiff contends that at the time Defendant presented him with the Written Agreement, he had already begun to suspect that Defendant was not paying him his full commissions, and that Defendant was concealing from him sales statements upon which he was due commissions. (Pl. Mem. in Opp. to Mt. for Sum. Judg. on Pl. *Q.M.* Cl. at 4). Plaintiff maintains that, when Defendant demanded he sign the Written Agreement, he made representations to Defendant as an effort to stall for time in order to allow him to "determine whether his suspicions were true." *Id.* Plaintiff also maintains, through the deposition testimony of his expert, Willis Fitch, that he was justified in not signing the agreement because the agreement was unfair to Plaintiff. *Id.* (citing Pl. Mem. in Opp. to Def. Mt. for Sum. Judg., Ex. H., pp. 59, 87-91).

In light of the conflicting facts presented by the parties, the Court will not find as a matter of law that Plaintiff's *quantum meruit* claim is barred by his alleged unclean hands. The facts of

the case will be decided by the jury. As such, Defendant's Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim is <u>denied</u>.

**b.    Plaintiff's Motion for Summary Judgment**

**i. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim for Fraud**

Plaintiff contends that "Defendant's [c]ounterclaim does not allege sufficient facts to meet the requirements of Federal Rule of Civil Procedure 9(b) to plead fraud with particularity." (Pl. Mem. in Sup. of Mt. for Sum. Judg. at 6).

Defendant's counterclaim is based on an alleged false representation by Plaintiff. (Def. Ans. to Am. Cmpl. and Cntrcl. ¶¶ 10-13). As such, the essential elements for pleading fraud in North Carolina are:

> (1) False representation . . . of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005) (quoting *Ragsdale v. Kennedy*, 286 N.C.130, 138, 209 S.E.2d 494, 500 (1974)). As the Court noted above in regard to Plaintiff's fraudulent concealment claim, a claim for fraud must be stated with particularity under Federal Rule of Civil Procedure 9(b). However, as the Court also noted, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the [respondent] has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that the [claimant] has substantial pre-discovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

In its counterclaim for fraud, Defendant alleged in relevant part that:

10. [Plaintiff's] representations that he would sign the Written Agreement were false and were calculated to deceive [Defendant]. [Plaintiff's] repeated representations that he would sign the Written Agreement were further made with the intent to deceive [Defendant].

11. [Defendant] was in fact deceived by [Plaintiff's] false representations and [Defendant] in fact believed that [Plaintiff] had agreed, at least in principal, to the material terms set forth in the Written Agreement, including that [Plaintiff] agreed to be paid a variable rate of commission on the sales of metal stampings to Prodelin Corporation.

12. [Defendant] detrimentally relied on [Plaintiff's] false representations that he would sign the Written Agreement in its bidding on Prodelin projects and on the commission payments it made to [Plaintiff]. [Defendant's] detrimental reliance on [Plaintiff's] representations that he would sign, and thus be bound by, the Written Agreement presented to him was reasonable.

13. [Defendant] has suffered damages in an amount to be determined at trial as a direct and proximate result of [Defendant's] reliance on [Plaintiff's] false representations that he would sign the Written Agreement.

(Def. Ans. to Am. Compl. and Cntrcl. ¶¶ 10-13).

Defendant's counterclaim for fraud was filed on October 30, 2006 in response to Plaintiff's Amended Complaint, and was filed well before the December 15, 2006 extended deadline for discovery completion. Plaintiff is well aware of Defendant's allegations over the disputed Written Agreement and has presented evidence pertaining to his version of the facts, which the Court has already discussed. Therefore, in light of Defendant's pleadings and the party's extensive briefing on Defendant's allegations, the Court finds that Defendant has fulfilled his requirements under Federal Rule of Civil Procedure 9(b) for his counterclaim for fraud. Plaintiff's motion for summary judgment on the grounds that Defendant failed to plead fraud with particularity under Rule 9(b) is denied.

Plaintiff makes additional assertions in support of his motion for summary judgment that

Defendant has not presented evidence that: a) Plaintiff in fact made a false representation; b) Defendant detrimentally relied on Plaintiff's alleged misrepresentations, and c) Defendant in fact suffered damages from Plaintiff's alleged misrepresentations. (Pl. Mem. in Sup. of Mt. for Sum. Judg. at 6-9; Pl. Rep. Mem. in Sup. of Mt. for Sum. Judg. at 1-4).

Without reciting the alleged facts yet again, the Court notes that Defendant has presented evidence, and Plaintiff in some respects has admitted that, in late 2003 or early 2004, Defendant presented Plaintiff with a written agreement, which Defendant allegedly believed Plaintiff would sign based on Plaintiff's statements to Defendant. (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg., Ex. A, p. 136, ("Deposition of Plaintiff")). Defendant has also stated that it detrimentally relied on, and suffered damages from Plaintiff's alleged misrepresentations because, but for Plaintiff's misrepresentations, it would have priced/quoted its services differently, and would have terminated Plaintiff at an earlier date. (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 9-10, Ex. C, p. 62-63, 75, ("Deposition of Douglas Althaus")). Therefore, viewing the evidence in the light most favorable to Defendant, Plaintiff's motion for summary judgment on Defendant's counterclaim for fraud is <u>denied</u>.[6]

## ii. Plaintiff's Motion for Summary Judgment on Defendant's Eighth Affirmative Defense Based on the Statute of Limitations

---

[6] Plaintiff also seeks summary judgment on Defendant's counterclaim for unfair and deceptive trade practices. (Pl. Mem. in Sup. of Mt. for Sum. Judg. at 9-10). As the Court noted above, under North Carolina law, "[i]t is axiomatic that proof of fraud itself constitutes a violation of the prohibition against unfair and deceptive trade practices." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E.2d 174, 180 (1986). Therefore, having found that Defendant has come forward with sufficient evidence to survive summary judgment on its counterclaim for fraud, the Court also finds that Defendant has come forward with sufficient evidence to survive summary judgment on its counterclaim for unfair and deceptive trade practices. Therefore, Plaintiff's motion for summary judgment on Defendant's counterclaim for unfair and deceptive trade practices is <u>denied</u>.

Defendant, in the Eighth Affirmative Defense of its Answer and Amended Answer, states, "Defendant is entitled to have any recovery by [P]laintiff for commissions owed to [P]laintiff offset by any previous overpayment of commissions [by Defendant] to [P]laintiff." (Ans. at 6; Ans. to Am. Compl. at 7). Plaintiff moves for summary judgment on Defendant's Eighth Affirmative Defense on the grounds that its request for offset is barred by the North Carolina Statute of Limitations. (Pl. Mem. in Sup. of Mt. for Sum. Judg. at 5).

In response to Plaintiff's motion for summary judgment on its eighth affirmative defense, Defendant contends that, "as an affirmative defense for recoupment," Defendant's eighth affirmative defense is "not barred by the statute of limitations." (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 13).[7] To support its assertion, Defendant cites *Herring v. United States*, 131 F.Supp. 536, 537 (E.D.N.C. 1955). In *Herring*, a federal question case involving tax law, the Court found that the "principle of equitable recoupment" did not apply to the case. *Id*. The Court nevertheless summarized the concept as follows:

> '[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 700 (1935). If A sues B for a debt and B has a

---

[7] Defendant requests "offset" in its eighth affirmative defense, but construes the same defense as one of "recoupment" in its memorandum in opposition to summary judgment. (Ans. to Am. Cmpl. at 7; Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 13). The Court notes that the terms "offset," or "set-off" as it is also known, *see Perry v. First Citizens Bank and Trust Co.*, 223 N.C. 642, 643, 27 S.E.2d 636, 637 (1943), and "recoupment" are distinct remedies with distinct legal definitions. *See* N.C. Damages § 11:35, nn. 2, 3 (5th ed. 2006) ("[s]et-off is the right to counterbalance all mutual debts and liabilities so that in any action brought for the larger debt, the residue only will be recovered.") (citing Black's Law Dictionary (5th ed.)) ("[r]ecoupment is the right of a defendant to a deduction from the amount of the plaintiff's damages on the basis that the plaintiff has not complied with cross-obligations or independent covenants arising under the same contract.") (citing Black's Law Dictionary (5th ed.)). However, this distinction does not appear to affect the relief Defendant seeks, a deduction from Plaintiff's potential recovery based on alleged overpayment of commissions. Likewise, this distinction does not appear to affect the Court's reading of the authorities cited below, whose legal principles appear to apply equally to offset and recoupment, despite a given authority's use of one term or the other.

claim against A arising out of the same transaction, which claim is barred by the statute of limitations, B may nevertheless recoup or keep back the amount of his claim against A. 80 C.J.S., Set-Off and Counterclaim, § 2; Restatement, Judgments, p. 217; Annotation, 1 A.L.R.2d 666.

*Id*.

In further support for its argument, Defendant quotes from *American Jurisprudence Second* and *Corpus Juris Secundum*. (Def. Mem. in Opp. to Pl. Mt. for Sum. Judg. at 13-14) (quoting 51 AM. JUR. 2D *Limitation of Actions* § 123 (2007)) ("[r]ecoupment, being in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, survives the expiration of the period provided by a statute of limitation that otherwise would bar the recoupment claim as an independent cause of action."); (quoting 54 C.J.S. *Limitations of Actions* § 62 (2007)) ("if a responsive pleading arose from the transaction or occurrences upon which a claim asserted in the complaint depends, it is not barred by the statute of limitations to the extent of the demand in the complaint."). Defendant does not, however, provide a citation to any case applying North Carolina law that supports his argument that the statute of limitations does not apply to a defense of recoupment or offset.

The case of *Perry v. First Citizens Bank and Trust Co.*, 223 N.C. 642, 27 S.E.2d 636 (1943), the lone North Carolina case that the Court is aware of that may provide guidance on the issue, seems to flatly contradict Defendant's argument. *Perry* involved a plaintiff-distributee's claim against a defendant-administrator for recovery of the plaintiff's distributive share of an estate. *Id*. at 642-43, 27 S.E.2d at 636-37. The defendant-administrator asserted, in a defense of offset, several debts that the plaintiff owed to the estate through the decedent. *Id*. The plaintiff in turn asserted the statute of limitations against the defendant's offset defense. *Id*.

The Supreme Court of North Carolina construed the issue in *Perry* as follows: "[w]hen a distributee sues to recover his distributive share of the estate and the administrator pleads by way of offset, under his alleged right of retainer, debts due by the distributee to the estate, is the plea of the statutes of limitations available to the plaintiff?" *Id.* at 643, 27 S.E.2d at 637. The Court commented that courts at the time were "sharply divided" on the question, and noted that "[i]n many courts it is held that a demand of a defendant, whether pleaded by way of setoff, counterclaim, or cross bill, is regarded as an affirmative action, and therefore, unlike a matter of pure defense, is subject to operation of the statute of limitations, and is unavailable if barred." *Id.* (citing 16 A.L.R. 328). The Court also noted that, "[i]n most, if not all, the jurisdictions in which it is held that a barred claim is available as an offset, the courts base their decisions upon some provision of a local statute." *Id.* (citing Annotation, 16 A.L.R. 331). Before reaching its decision, the Court noted that the case was one of "first impression in this jurisdiction." *Id.*

Finally, the Court held,

Had defendant elected to plead the debt of plaintiff . . . as a counterclaim or by way of cross action and prayed judgment for the full amount, his claim would be barred. This would seem to be clear. His plea here is in effect a plea of setoff. He seeks to establish the debt and to recover so much thereof as may be necessary to cancel the claim of the plaintiff. This is an affirmative defense, under which defendant seeks affirmative relief. There is no sound reason why we should say that this demand for part recovery is not equally subject to the plea of the statute.

*Id.*

The Court further held,

The doctrine of equitable setoff does not apply. Defendant asserts a legal claim. The estate is just as much a debtor to him as he is to the estate. Each has a legal right and remedy. And a statute-barred debt is no more recoverable by an estate than by any other creditor. In many instances, as here, such claims are covered by the dust of time and forgotten, although found by the administrator after the death

of his intestate.

*Id*.

The Supreme Court of North Carolina's holding in *Perry* seems to be directly applicable to this case. Like the defendant-administrator in *Perry*, Defendant here is effectively asserting a legal claim, in this case, recovery of alleged overpayment of commissions to Plaintiff. Defendant construes this claim as a defense in order to mitigate any potential recovery by Plaintiff. The Court, however, is reluctant to apply *Perry* to this case at this stage in the litigation. *Perry* has never been cited by a succeeding North Carolina appellate court for its holding that the statute of limitations may bar an affirmative defense of offset or recoupment. Furthermore, modern authority in other jurisdictions suggest that the affirmative defense of recoupment is not subject to the statute of limitations. *See, e.g., Beach v. Owen Federal Bank*, 523 U.S. 410, 415-16, 118 S.Ct. 1408, 1411 (1998) (recognizing, in the context of federal law claims, that the defense of recoupment "survives the expiration of the period provided by the statute of limitation that would otherwise bar a recoupment claim as an independent cause of action."); *Cummings v. Fulghum*, 261 Va. 73, 80, 540 S.E.2d 494, 480 (2001) (recognizing that a plea of recoupment, a *statutory* defense in Virginia, is not subject to the statute of limitations). Additionally, neither party has discussed *Perry*, or identified any North Carolina authority that would support or distinguish the case's applicability in this case.[8] As such, the Court will not find as a matter of law at this stage in the litigation that the North Carolina statute of limitations applies to Defendant's eighth

---

[8] The Court notes that, although Plaintiff filed a reply brief in response to Defendant's other arguments against Plaintiff's motion for summary judgment, he did not respond at all to Defendant's argument that the statute of limitations did not apply to its eighth affirmative defense. (Pl. Rep. Mem. in Sup. of Mt. for Sum. Judg.).

affirmative defense.[9]

Therefore, Plaintiff's motion for summary judgment on the grounds that Defendant's eighth affirmative defense is barred by the statute of limitations is <u>denied</u>.

## C. Parties' Joint Motion for Order for Discovery of Financial Records

The parties filed a joint motion seeking discovery of the each other's financial records, contingent upon the Court's denial of the parties' respective motions for summary judgment. (Joint Mt. for Order for Disc. of Fin. Rec.). The parties requested that the Court enter an order as follows:

1. Should Plaintiff's motion for summary judgment on Defendant's counterclaim for fraud be denied, then Plaintiff shall produce to Defendant within 20 days thereafter the documents requested in Defendant's Document Request #12 seeking tax returns and similar information from Plaintiff; and

2. Should Defendant's motion for summary judgment on Plaintiff's claim for fraud be denied, then Defendant shall produce to Plaintiff within 20 days thereafter the balance sheets and income statements requested in Plaintiff's Document request #7.

*Id*.

The Court having denied both parties' motions for summary judgment, the parties joint motion for discovery is <u>granted</u>.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Amend Complaint is hereby **GRANTED**.

---

[9] Even if the Court applied the statute of limitations to Defendant's affirmative defense, the question of when Defendant's claims of recoupment accrued for each overpaid commission would be a factual question for the jury.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Amended Reply to Defendant's Counterclaim is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's *Quantum Meruit* Claim is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Parties' Joint Motion for Order for Discovery of Financial Records is hereby **GRANTED**, **THEREFORE:**

   1. Plaintiff shall produce to Defendant **within 20 days**, the documents requested in Defendant's Document Request #12 seeking tax returns and similar information from Plaintiff; and

   2. Defendant shall produce to Plaintiff **within 20 days**, the balance sheets and income statements requested in Plaintiff's Document request #7.

Signed: December 3, 2007

Richard L. Voorhees
United States District Judge